PETERSON, Respondent, v. PETERSON, Appellant.

(272 N. W. 177)

(File No. 7947. Opinion filed March 29, 1937)

*Danforth & Davenport,* of Sioux Falls, for Appellant.

*Dan. E. Hanson* and *Alan Bogue,* both of Parker, for Respondent.

PER CURIAM. This is an action to quiet title to certain land in Turner county, S. D. The defendant claims title by virtue of a certain tax deed obtained by him on August 25, 1933. The only matter at issue is whether this tax deed was sufficient to vest title in defendant. The land in dispute was purchased by the plaintiff about 1881. In 1922, by a so-called "mortgage deed," the plaintiff transferred this land to his daughter Emma and her husband, Fred Smith. The deed provided that the grantee should pay all taxes levied and assessed against such land, and interest at the rate of 6 per cent per annum on the sum of $10,000, which the mortgage deed was given to secure, during the lifetime of the plaintiff and his wife. Emma and her husband failed to pay the interest and the taxes.

Peter Peterson is a son of the plaintiff and the father of the defendant Jorgen F. Peterson who is claiming title to this land by virtue of the tax deed. The plaintiff, in addition to owning the land deeded to Emma, owned a large amount of other land. To some of this land plaintiff still retained title in himself, but other lands he had transferred to his other children, the son Peter included. Peter and his father, apparently, had many dealings back and forth, most of which concerned the land owned by the family. Peter testified: "My father had given me some other land, 40 acres and 160 acres. That was later transferred to my son. He did not give me any more. We had been exchanging money back and forth at times. He might have let me have money to pay taxes on some land. He may have given me some liberty bonds, but I cannot say as to the amount, whether it is $1,000 or not. * * * Before my father went up to North Dakota he gave me a note for $400 and he afterwards paid it. That was given to me for payment of taxes that I paid for him before he went to North Dakota, but that was not on the Smith land."

In January, 1932, the plaintiff went to North Dakota to visit. While there, plaintiff sent to his son Peter $5,000. Plaintiff became ill while in North Dakota and on the 3d day of February, 1932, executed a power of attorney appointing Peter as his attorney "to handle the renting of my land and in doing this to sign contracts, to collect notes, release mortgages and to foreclose mortgages." Plaintiff, while in North Dakota, was concerned with the business in South Dakota generally, and especially with the land he had transferred to Emma. On January 31st plaintiff wrote to Peter in part, as follows: "I cannot say when I can come home but if you want to have agency to handle Emma's affairs then you can as well get it from me but then you must act soon to save trouble."

On February 20th, plaintiff wrote to Peter referring to Emma's land, as follows: "Has anyone paid the tax on her land? Redeem it. * * * Tell her from me that she better give me deed to the land then shall it all be good again and let him sign it. Else she must give an affidavit, and do it soon, that she has not signed, to save trouble."

In 1930 Peter purchased the tax sale certificate to the land

which had been transferred to Emma. Thereafter in 1931 and 1932 Peter paid the subsequent taxes on this land. In October, 1932, Peter assigned this tax certificate to his son Jorgen F. Peterson, the defendant herein, and Jorgen F. paid the subsequent taxes until the issuance of the tax deed in August, 1933. The plaintiff testified, as follows: "I never did tell Peter to pay the taxes on the Smith land and get the title in that way for Jorgen F."

It appears further that, while plaintiff was ill and in North Dakota, Peter paid the taxes upon other lands belonging to the plaintiff and was generally conducting plaintiff's business in South Dakota, plaintiff at the time being a man in his late seventies. Peter testified: "When I was up in North Dakota my father did give me power of attorney, but he did not furnish me any money. He did send me $5,000 at one time. That was in January 18, 1932. He might have sent me $340.00 in April, 1932, and I think I got some money from Arthur after that. I got some notes signed by some people obligated to my father. I think I did. I got a check from J. D. Flint probably for $600, but not on this deal. I might have got a check from Louis Hanson payable to my father and endorsed by me. I do not think I owed my father any money at the time I got power of attorney. Some years back I might have. I paid taxes for my father on other lands that my father owned."

The trial court found all of the issues in favor of the plaintiff. It is appellant's contention that the evidence submitted by him discloses that his father (Peter) purchased the tax sale certificate upon this land which had been transferred to Emma with an understanding with the plaintiff that the plaintiff wanted this land to become the land of Jorgen F., and that plaintiff was advised that the taxes were paid by Peter and the deed taken to Jorgen F. for this purpose of getting title to the land in Jorgen F. There is evidence to support this contention, but plaintiff now flatly denies any such agreement with Peter or any knowledge that Peter had paid taxes from his own funds upon this land prior to the time that he received notice of the tax deed being applied for. Plaintiff further testified in substance that, because of the manner in which he and Peter had handled their property transactions, he believed that taking title to this land in the name of Jorgen F. was simply a

convenience, and that he "always thought they would be willing to give that back to me."

The issues presented, argued, and submitted are entirely issues of fact, and the assignments go to the sufficiency of the evidence to support the findings of fact made by the trial court. We have detailed some of the evidence most favorable to the plaintiff, which it would appear was relied upon by the trial court in making his findings. We believe this evidence amply sufficient to justify the findings of the trial court. There was, no doubt, evidence from which the trial court could have made findings favorable to defendant, but the evidence does not so clearly preponderate in favor of defendant that we would be justified in ignoring the findings of the trial court made, at least in part, upon the evidence which we have detailed herein.

The judgment and order appealed from are affirmed.

RUDOLPH, P. J., and POLLEY, ROBERTS, and WARREN, JJ., concur.

SMITH, J., not sitting.